1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHAEL C. HANSEN,

                              Plaintiff,

        v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                              Defendant.

Case No. 10-cv-5283-RJB-JRC

REPORT AND RECOMMENDATION

NOTED:  January 21, 2011

        This matter has been referred to Magistrate Judge J. Richard Creatura pursuant to 28

U.S.C. § 636(b)(1) and Local Magistrates Rule MJR 4(a)(4); and, as authorized by Mathews,

Secretary of  H.E.W. v. Weber, 423 U.S. 261, 271-72 (1976).  This matter has been fully briefed.

(See ECF Nos. 12, 13, 16.)

        After considering and reviewing the record, the undersigned finds that the ALJ erred by

failing to consider lay witness evidence, and by failing to provide specific and germane reasons

to reject the lay witness evidence. The undersigned recommends that this matter be reversed and

remanded for further consideration by the Administration.

REPORT AND RECOMMENDATION - 1

BACKGROUND

Plaintiff was born on November 23, 1954. (Tr. 88.) At a March 13, 2008 hearing, plaintiff testified that he graduated from high school and attended a technical college for a year. (Tr. 44.) Plaintiff also testified that he has been doing auto body work on and off throughout his adult life. (Tr. 28.) Plaintiff testified that he did seasonal carpentry work between 2002 and 2004. (Tr. 30.) However, that work ended as plaintiff lost his temper and swore at the foreman. (Id.)

Plaintiff testified that he may have been registered for temporary work through Labor Express or Labor Ready in 2005. (Tr. 31.) He also stated that he took care of animals and an almost ten-acre farm. (Tr. 32.) However, due to a flood in 2006, all of his animals were lost. (Id.) Plaintiff testified that he was able to "walk out, get the paper, get the mail and stuff. And that's about a half a mile walk out to get the mailbox. Come back - - and then halfway out there, I'd have to do a stop, sit down, take my inhaler, wait for a few minutes, and then be able to walk back." (Tr. 33.)

Ms. Hansen, plaintiff's wife, provided lay witness testimony. (Tr. 127-35.) She stated that plaintiff  "wants to sleep all day . . . .  If he doesn't stay busy he falls asleep." (Tr. 128.) She also stated that he "only bathes when I tell him to," and "[s]ometimes he starts talking about stuff no one understands." (Tr. 128, 131.) Ms. Hansen also wrote that plaintiff "gets angry when told to do things and has started talking about crazy things no one understands." (Tr. 133.)

Plaintiff alleges that he suffers severe knee pain from injuries to his knees that occurred while working at an auto body shop approximately 10 to 15 years prior to his filing for disability. (Tr. 19.) Plaintiff did not seek medical attention at that time, and took no medication for his knee complaints. (Id.) A subsequent medical examination revealed "no obvious deformities." (Tr. 19.) Although plaintiff alleges severe breathing problems, the inhalers he was prescribed worked well

for him, and he continues to smoke approximately one pack of cigarettes per day. (Id.) Medical

pulmonary testing revealed moderate obstruction with bronchodilator reversibility. (Tr. 22, 238.)

PROCEDURAL HISTORY

Plaintiff filed applications for supplemental security income and disability insurance

benefits on August 1, 2005, when he was 50 years old. (Tr. 88-102.) He alleged that he became

unable to work on February 28, 2004, due to symptoms of schizophrenia, asthma, and breathing

problems. (Tr. 88, 113.) After a hearing on March 13, 2008, the Administrative Law Judge

(hereinafter "the ALJ") issued a decision finding plaintiff not under a disability as defined in the

Social Security Act (hereinafter "the Act") from his alleged onset date through the date of the

decision, March 27, 2008. (Tr. 24.)

The ALJ made specific findings. In his step-one analysis in the sequential disability

evaluation, he concluded that plaintiff had not engaged in substantial gainful activity since the

alleged onset date of February 28, 2004. (Tr. 17.) In step two of his analysis, he concluded that

plaintiff had the severe impairments of asthma and personality disorder. (Id.) The ALJ discussed

much of the medical and factual evidence beginning at this step in his opinion.

In the decision, the ALJ reviewed the September 21, 2005 consultative evaluation of

Kathleen S. Mayers, Ph.D. (hereinafter "Mayers"). (Tr. 18, 19, 21.) Mayers notes indicate

plaintiff's allegations of poor concentration ability as his primary complaint, and his estimate

that he could concentrate for up to one hour. (Tr. 18.) Her notes also indicate plaintiff's

indications of extreme fatigue. (Id.) The ALJ also noted Mayers' notation of plaintiff's last

reported work as five months prior to the September 21, 2005 evaluation, as well as his

registration at the time with a temporary work agency. (Id.) Mayers' notes reflected plaintiff's

daily activities of running the ten-acre farm, including caring for twelve chickens, four goats and

REPORT AND RECOMMENDATION - 3

two rabbits. (Id.) Mayers administered a mental status examination and opined that plaintiff's concentration, judgment, math skills were below average, although the ALJ notes that Mayers did not administer formal intelligence testing. (Id.) The ALJ indicates that Mayers "noted features of an anti-social personality disorder, but assigned him a Global Assessment of Functioning (GAF) score of 60, indicating only moderate symptoms." (Id.)

The decision of the ALJ discusses the consultative physical evaluation performed by Gary Gaffield, D.O. (hereinafter "Gaffield"). (Tr. 18-19.) Among other notes from this evaluation, the decision discusses plaintiff's allegations that "he was exposed to paint fumes and dust that resulted in significant lung problems," as well as plaintiff's cigarette smoking. (Tr. 19) The decision discusses the examination by Gaffield, which "indicated wheezing throughout the chest/lungs, worse on the right, which did not clear with coughing." (Id.) Gaffield's examination notes discuss plaintiff's allegation that ten to fifteen years prior to the examination he fell on both knees, but did not seek medical attention, although plaintiff also alleged that the knee pain became progressively worse. (Id.) Regarding this knee pain, Gaffield's examination indicated "no obvious deformities, [however, plaintiff] complained of tenderness along palpation of the anterior aspect of the left knee at the level of the meniscus." (Id.) The ALJ also notes that Gaffield's examination revealed no indication of a tear in either of the cruciate ligaments of the knee (negative drawer sign) and "no pain with medial and lateral pressure on the collateral ligaments." (Id.)  The decision reflects Gaffield's notation that plaintiff "ambulated without difficulty." (Id.) Although Gaffield's notes indicate that plaintiff "winced with pain occasionally when he bore weight on his left knee," they also indicate that there were "No areas of crepitus or edema, nor were there trigger points." (Id.)

REPORT AND RECOMMENDATION - 4

The decision of the ALJ discusses plaintiff's treatment at Cascade Mental Health (hereinafter "Cascade") in October, 2006. (Id.) In this discussion, the ALJ notes plaintiff's diagnosis of major depressive disorder, but also notes that plaintiff still was "assessed a GAF of 55, still indicating only moderate symptoms." (Id.) The decision discusses the mental health evaluation by Anjan Sattar, M.D., (hereinafter "Sattar"), and plaintiff's prescriptions of a mood stabilizer and a sleeping agent by Sattar. (Id.) The ALJ also noted that at plaintiff's "most recent therapy session, in December 2007, [plaintiff] reported to his therapist that he had no specific complaint or concerns and was doing fairly well with his medication." (Id.)

The ALJ also discussed plaintiff's hearing testimony. (Tr. 19-20.) The ALJ notes plaintiff's seasonal carpentry work as well as his registration for temporary work during the period of alleged disability. (Id.) The ALJ discussed plaintiff's allegations regarding difficulties interacting with others and his weekend alcohol use. (Tr. 20.)

Regarding the medical testimony, the ALJ found the opinions of the State agency medical consultants "most persuasive," however, the "evaluation form completed by Kristine S. Harrison, Psy.D., [was found] not [] particularly persuasive." (Tr. 22.) The ALJ discussed the reasoning underlying his evaluation. (Id.)

In his step-three analysis in the sequential disability evaluation, the ALJ concluded that plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. pt. 404, subpt. P. app. 1. (Tr. 20.)

The ALJ concluded that according to plaintiff's residual functional capacity, he was able to perform light work, meaning that he could lift/carry twenty pounds one third of the day and ten pounds two thirds of the day; stand/walk six hours in an eight hour workday; sit two hours in an eight hour workday; climb stairs and balance frequently, but never climb ladders, ropes or

scaffolds; and could stoop, crouch and crawl occasionally. The ALJ found that plaintiff should avoid vibration, excessive fumes/odors/dusts/gases, as well as avoid hazards including moving machinery and heights. The ALJ found that plaintiff could perform simple, routine tasks that involve no more than occasional (one third of the day) contact with the public, co-workers, or supervisors. (Tr. 21.) Although the ALJ found plaintiff unable to perform any past relevant work, he also found that jobs that exist in significant numbers in the national economy that the claimant could perform. (Tr. 23.) He found plaintiff not disabled. (Tr. 24.)

On February 18, 2010, the Appeals Council denied plaintiff's request for review, thus, the ALJ's decision is the final administrative decision subject to judicial review. (Tr. 1-4.) The instant Complaint (ECF No. 2) was submitted to the Court, along with an application to proceed in forma pauperis (ECF No. 1), on April 23, 2010. Plaintiff alleges the ALJ and the administration erred in denying plaintiff's applications for benefits on the following basis:

1.  The ALJ erred by failing to identify properly all of plaintiff's severe impairments.

2.  The ALJ failed to consider properly all of the functional limitations caused by all of plaintiff's impairments.

3.  The ALJ erred by failing to evaluate properly the medical evidence.

4.  The ALJ erred by failing to evaluate properly plaintiff's testimony regarding his symptoms and limitations.

5.  The ALJ erred by failing to evaluate properly the lay evidence.

6.  The ALJ erred in his assessment of plaintiff's residual functional capacity.

7.  The ALJ erred by failing to find that plaintiff was disabled at step five in the sequential disability evaluation.

REPORT AND RECOMMENDATION - 6

1 (See plaintiff's Opening Brief, ECF No. 12, at p. 10.) Plaintiff also alleges that the Appeals

2 Council erred by failing to remand plaintiff's claim based on the new evidence that was

3 submitted to it. (Id.)

4                                    STANDARD OF REVIEW

5          Plaintiff bears the burden of proving disability within the meaning of the Social Security

6 Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (citing

7 Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)). The Act defines disability as the

8 "inability to engage in any substantial gainful activity" due to a physical or mental impairment

9 "which can be expected to result in death or which has lasted, or can be expected to last for a

10 continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

11 Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that

12 plaintiff is unable to do previous work, and cannot, considering plaintiff's age, education, and

13 work experience, engage in any other substantial gainful activity existing in the national

14 economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); cf. Tackett v. Apfel, 180 F.3d 1094, 1098-

15 99 (9th Cir. 1999) (summarizing the five-step sequential analysis).

16          Pursuant to 42 U.S.C. § 405(g), this court may set aside the Commissioner's denial of

17 social security benefits if the ALJ's findings are based on legal error or not supported by

18 substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th

19 Cir. 2005) (citing Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)).

20          "The ALJ is responsible for determining credibility, resolving conflicts in medical

21 testimony, and for resolving ambiguities."  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.

22 1995) (citing Magallenes, 881 F.2d at 750).  It is not the job of the court to reweigh the evidence:

23 If the evidence is susceptible to more than one rational interpretation, including one that supports

REPORT AND RECOMMENDATION - 7

1   the decision, the Commissioner's conclusion must be upheld. <u>Thomas v. Barnhart</u>, 278 F.3d 947,

2   954 (9th Cir. 2002) (*citing* <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir.

3   1999)).

4           If the medical evidence in the record is not conclusive, sole responsibility for resolving

5   conflicting testimony and questions of credibility lies with the ALJ.  <u>Sample v. Schweiker</u>, 694

6   F.2d 639, 642 (9th Cir. 1999) (*quoting* <u>Waters v. Gardner</u>, 452 F.2d 855, 858 n.7 (9th Cir. 1971)

7   (*citing* <u>Calhoun v. Bailar</u>, 626 F.2d 145, 150 (9th Cir. 1980))).  The ALJ also may "draw

8   inferences logically flowing from the evidence."  <u>Sample</u>, 694 F.2d at 642 (*citing* <u>Beane v.</u>

9   <u>Richardson</u>, 457 F.2d 758 (9th Cir. 1972); <u>Wade v. Harris</u>, 509 F. Supp. 19, 20 (N.D. Cal.

10  1980)).

11

12  ***Plaintiff's Credibility***

13          An ALJ is not "required to believe every allegation of disabling pain" or other non-

14  exertional impairment.  <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989) (*citing* 42 U.S.C. §

15  423(d)(5)(A)). Even if a claimant "has an ailment reasonably expected to produce *some* pain;

16  many medical conditions produce pain not severe enough to preclude gainful employment." <u>Fair</u>,

17  885 F.2d at 603 (emphasis in original). Nevertheless, the ALJ's credibility determinations "must

18  be supported by specific, cogent reasons."  <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998)

19  (*citing* <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995)). If an ALJ discredits a claimant's

20  subjective symptom testimony, the ALJ must articulate specific reasons for doing so.  <u>Greger v.</u>

21  <u>Barnhart</u>, 464 F.3d 968, 972 (9th Cir. 2006).  In evaluating a claimant's credibility, the ALJ

22  cannot rely on general findings, but "'must specifically identify what testimony is credible and

23  what evidence undermines the claimant's complaints.'" <u>Id.</u> at 972 (*quoting* <u>Morgan v. Comm'r</u>

24  <u>of Soc. Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir. 1999)); <u>Reddick</u>, 157 F.3d at 722 (citations

25

26

REPORT AND RECOMMENDATION - 8

omitted); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted). The ALJ

may consider "ordinary techniques of credibility evaluation," including the claimant's reputation

for truthfulness, inconsistencies in testimony, daily activities, and "unexplained or inadequately

explained failure to seek treatment or to follow a prescribed course of treatment." <u>Smolen</u>, 80

F.3d at 1284. The determination of whether or not to accept a claimant's testimony regarding

subjective symptoms requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; <u>Smolen</u>, 80

F.3d at 1281 (<i>citing</i> <u>Cotton v. Bowen</u>, 799 F.2d 1403 (9th Cir. 1986)).  First, the ALJ must

determine whether there is a medically determinable impairment that reasonably could be

expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); <u>Smolen</u>, 80

F.3d at 1281-82.  Once a claimant produces medical evidence of an underlying impairment, the

ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a

lack of objective medical evidence to fully corroborate the alleged severity of pain." <u>Bunnell v.</u>

<u>Sullivan</u>, 947 F.2d 341, 343 (9th Cir. 1991) (<i>en banc</i>) (<i>citing</i> <u>Cotton</u>, 799 F.2d at 1407).  Absent

affirmative evidence that the claimant is malingering, the ALJ must provide "clear and

convincing" reasons for rejecting the claimant's testimony. <u>Smolen</u>, 80 F.3d at 1283-84;

<u>Reddick</u>, 157 F.3d at 722 (<i>citing</i> <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1996); <u>Swenson v.</u>

<u>Sullivan</u>, 876 F.2d 683, 687 (9th Cir. 1989)).

### *Medical Evidence Determinations*

"The ALJ may disregard the treating physician's opinion whether or not that opinion is

contradicted." <u>Batson v. Commissioner of Social Security Administration</u>, 359 F.3d 1190, 1195

(9th Cir. 2004) (<i>quoting</i> <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)). Even if a

treating or examining physician's opinion is contradicted, that opinion "can only be rejected for

specific and legitimate reasons that are supported by substantial evidence in the record." <u>Lester</u>,

REPORT AND RECOMMENDATION - 9

81 F.3d at 830-31 (*citing* Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986) (per curiam) (*citing* Swanson v. Secretary, 763 F.2d 1061, 1065 (9th Cir. 1985)); see also Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  However, the ALJ "need not discuss *all* evidence presented."  Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam) (emphasis in original).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant.  Lester, 81 F.3d at 830.  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830 (citations omitted); see also 20 C.R.R. § 404.1527(d).  A non-examining physician's opinion may not constitute substantial evidence by itself. Id. at 31 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan, 242 F.3d at 1149 (*citing* Magallanes, 881 F.2d at 752).  The ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." Sousa v. Callahan, 143 F.3d 1240, 1244 (9th Cir. 1998) (*citing* Gomez v. Chater, 74 F.3d 967, 972 (9th Cir. 1996); Andrews, 53 F.3d at 1041).

### *Lay Witness Statements/Evidence*

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work."  Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006) (*citing* Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)). Lay witness testimony "is competent evidence and 'cannot be disregarded without comment.'" Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (*quoting* Nguyen v. Chater, 100 F.3d 1462,

1467 (9th Cir. 1996)). Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless the ALJ expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.  Bruce, 557 F.3d at 1115; Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); Nguyen, 100 F.3d at 1467 (*citing* Dodrill, 12 F.3d at 919). "[W]here the ALJ"s error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, 454 F.3d at 1056.

### *New Evidence*

The Court does not review the decision of the Appeals Council to deny review and remand based upon new evidence. Woodsum v. Astrue, 711 F. Supp. 2d 1239, 1248 (W.D. Wash. 2010) ("'our statutory jurisdiction is confined to review of the 'final decision of the Secretary''") (adopting reasoning of, and *quoting*, Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992) (*quoting* 42 U.S.C. § 405(g))). However, when a plaintiff contends that remand is appropriate in light of additional evidence first presented to the Appeals Council, in order to "justify remand under th[e] standard [recently utilized by the Ninth Circuit], a claimant must show that the additional evidence was both "new" and "material" to determining disability, and that he or she 'had good cause for having failed to produce that evidence earlier.'" Woodsum, 711 F. Supp. 2d at1250-51 (*quoting* Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001)).

In Mayes, the plaintiff had received a medical opinion diagnosing plaintiff with disc herniation after the ALJ had issued his decision finding plaintiff not disabled. Mayes, 276 F.3d at 458. The plaintiff in Mayes appealed the ALJ's decision to the Appeals Council, and presented this new medical opinion evidence to the Appeals Council. Id. The Appeals Council found no

REPORT AND RECOMMENDATION - 11

basis for granting the plaintiff's request for review, and the plaintiff appealed the ALJ's decision to the U.S. District Court. Id. The district judge adopted the Report and Recommendation of the magistrate judge, which included the conclusion that substantial evidence supported the ALJ's findings regarding the extent of the plaintiff's impairments, and concluded that the new medical opinion evidence did not supply "good cause" to remand the case to the ALJ. Id. The plaintiff appealed. Id.

According to the Ninth Circuit, to "justify a remand, [the plaintiff] must show that the [new evidence] is material to determining her disability, and that she had good cause for having failed to produce that evidence earlier." Id. at 462 (citing 42 U.S.C. § 405(g) (2001)). The Ninth Circuit applied this standard, and affirmed the district court, concluding that "[e]ven if the new evidence was material, the district court did not abuse its discretion in determining that [the plaintiff] had failed to show good cause for not having introduced that evidence earlier." Mayes, 276 F.3d at 462-63. In order for the new evidence to be "material under section 405(g), the new evidence must bear 'directly and substantially on the matter in dispute.'" Id. at 462 (*quoting* Ward v. Schweiker, 686 F.2d 762, 764 (9th Cir. 1982)).

***The Five-Step Evaluation Process***

The Social Security Administration has established a five-part sequential evaluation process in order to determine whether or not an individual is disabled as defined under the Act. 20 C.F.R. §§ 416.920(a)(4), 404.1520; see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

Step-one of the administration's evaluation process is consideration of claimant's work activity, if any. 20 C.F.R. §§ 404.1520(a)(4). If the claimant is engaged in substantial gainful activity, he will be found not disabled. 42 U.S.C. § 423(d)(1)(A); Andrews v. Shalala, 53 F.3d 1035, 1040 (9th Cir. 1995); 20 C.F.R. §§ 416.920(a)(4)(i), 416.920(b), 404.1520(a)(4)(i).

REPORT AND RECOMMENDATION - 12

1    Step-two of the administration's evaluation process requires the ALJ to determine

2    whether an impairment is severe or not severe. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii)

3    (1996). An impairment is "not severe" if it does not "significantly limit" the ability to conduct

4    basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a).  The Social Security Regulations

5    and Rulings, as well as case law applying them, discuss the step-two severity determination in

6    terms of what is "not severe."  According to the Commissioner's regulations, an impairment is

7    "not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic

8    work activities." 20 C.F.R. § 404.1521(a) (1991).  Basic work activities are "abilities and

9    aptitudes necessary to do most jobs," including, for example, "walking, standing, sitting, lifting,

10   pushing, pulling, reaching, carrying or handling; capacities for seeing, hearing and speaking;

11   understanding, carrying out, and remembering simple instructions; use of judgment; responding

12   appropriately to supervision, co-workers and usual work situations; and dealing with changes in

13   a routine work setting."  20 C.F.R. § 404.1521(b).  "An impairment or combination of

14   impairments can be found 'not severe' only if the evidence establishes a slight abnormality that

15   has 'no more than a minimal effect on an individual[']s ability to work.'"  Smolen v. Chater, 80

16   F.3d 1273, 1290 (9th Cir. 1996) (*quoting* Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)

17   (*adopting* SSR 85-28)). According to Social Security Ruling 96-3b, "[a] determination that an

18   individual's impairment(s) is not severe requires a careful evaluation of the medical findings that

19   describe the impairment(s) (*i.e.*, the objective medical evidence and any impairment-related

20   symptoms), and an informed judgment about the limitations and restrictions the impairments(s)

21   and related symptom(s) impose on the individual's physical and mental ability to do basic work

22   activities." SSR 96-3p, 1996 SSR LEXIS 10 (*citing* SSR 96-7p); see also Slayman v. Astrue,

23   2009 U.S. Dist. LEXIS 125323 at *33-*34 (W.D. Wash. 2009). If a claimant's impairments are

REPORT AND RECOMMENDATION - 13

1  "not severe enough to limit significantly the claimant's ability to perform most jobs, by

2  definition the impairment[s] do[] not prevent the claimant from engaging in any substantial

3  gainful activity." <u>Bowen</u>, 482 U.S. at 146.

4      Plaintiff bears the burden to establish by a preponderance of the evidence the existence of

5  a severe impairment that prevented performance of substantial gainful activity, and that this

6  impairment lasted for at least twelve continuous months.  20 C.F.R. §§ 404.1505(a), 404.1512,

7  416.905, 416.1453(a), 416.912(a); see also <u>Tidwell v. Apfel</u>, 161 F.3d 599, 601 (9th Cir. 1998)

8  (<i>citing</i> <u>Roberts v. Shalala</u>, 66 F.3d 179, 182 (9th Cir. 1995)). It is the claimant's burden to

9  "'furnish[] such medical and other evidence of the existence thereof as the Secretary may

10  require.'" <u>Bowen</u>, 482 U.S. at 146 (<i>quoting</i> 42 U.S.C. § 423(d)(5)(A)) (<i>citing</i> <u>Mathews v.</u>

11  <u>Eldridge</u>, 424 U.S. 319, 336 (1976)); <u>see also</u> <u>McCullen v. Apfel</u>, 2000 U.S. Dist. LEXIS 19994

12  at *21 (E.D. Penn. 2000) (<i>citing</i> 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.1505, 404.1520).

13

14                                    <u>DISCUSSION</u>

15

16  1.      <u>The ALJ did not fail to identify properly all of plaintiff's severe impairments.</u>

17      Plaintiff alleges that the ALJ erred by failing to identify properly all of plaintiff's severe

18  impairments. According to plaintiff, the ALJ's failure to find that plaintiff's alleged impairments

19  of hemorrhoids, Dysthymia, Impulse Control Disorder NOS, Intermittent Explosive Disorder,

20  Chronic Obstructive Pulmonary Disease (hereinafter "COPD"), bilateral knee pain, sleep

21  disturbance, and torn rotator cuff muscle in his right shoulder were severe impairments is not

22  supported by substantial evidence.

23      In addition to citing other evidence, when concluding which of plaintiff's impairments

24  were severe, the ALJ cited the following evidence:

REPORT AND RECOMMENDATION - 14

Despite an alleged onset date of February 2004, the medical record does not begin until September 2005, at which time the claimant underwent a consultative psychological evaluation at the request of the State agency. Ex. 1F. The claimant had never undergone outpatient counseling/therapy services and had never been hospitalized for psychiatric reasons. . . . . The claimant continued to be registered at Express, a temporary work agency, and last worked five months ago . . . . During a typical day, he awoke at five a.m. to have coffee and smoke cigarettes. Ex. 1F. 3. He might look for work and did 'whatever he needs to do around his property, keeps everything up and running, gets firewood, and makes sure the generator is running.' He went to the business in Packwood, Randle, and Morton, applying for work. He also ran the farm, which included ten acres, four goats, 12 chickens, and two rabbits. Ex. 1F. 4. He was raising the chickens for food and hoped to sell the goats. He cared for the animals and spent a couple of hours a day cleaning the pens. He was also able to cook and clean . . . . He was able to buy groceries and drive a car.

The claimant alleged that he had never experienced a problem with depression, and acknowledged no feelings of worthlessness, helplessness, or hopelessness. Ex. 1F. 2. He was able to experience joy and does not cry. He also added that he did not experience anxiety and 'has not had emotional problems.'

        . . . .

He continued to smoke approximately one pack of cigarettes per day. Ex. 4F. 2. With regard to his knee complaints, he alleged that 10 to 15 years previously he fell on both knees while working in a body shop. He did not seek medical attention at that time, but alleged that his pain became progressively worse, particularly in his left knee. He had not undergone any medical evaluation of his knee and took no medication for these complaints.

. . . . The claimant ambulated without difficulty. He removed his clothing without assistance and heel-to-toe walking was normal, though he winced with pain occasionally when he bore weight on his left knee. There were no areas of crepitus or edema, nor were there trigger points. He had full strength in all extremities. Sensory examination was also normal.

Pulmonary testing performed in May 2006 showed moderate airflow obstruction with bronchodilator reversibility. Ex. 9F. 7.

The claimant entered mental health treatment at Cascade Mental Health (Cascade) in October 2006. Ex. 13F. Contrary to his report to Dr. Mayers, upon intake at Cascade, the claimant alleged depression, worry, irritable/moody, difficulty sleeping, and trouble fully relaxing to sleep. Ex. 13F. 1. Not surprisingly, the claimant was diagnosed with major depressive disorder. Ex. 13F. 8. However, he was still assessed a GAF of 55, still

REPORT AND RECOMMENDATION - 15

1

2

3

4

5

6

7

8

9

10

11

12

13

indicating only moderate symptoms. . . . . in December 2007, the claimant reported to his therapist that he had not specific complaints or concerns and was doing fairly well with his medication. Ex. 9F. 2.[see Tr. 275.]

. . . . He also performed carpentry work on a seasonal basis, but alleged that the sawdust exacerbated his asthma. The claimant was also registered to perform temporary work during the relevant period.

. . . . The claimant was able to drive into town to get groceries . . . .

Thus, I find that [asthma and personality disorder] are both medically determinable and cause significant limitation to the performance of basic work activities. Other physical symptoms and conditions appear in the record from time to time, including vision complaint, an acute left shoulder injury, and hemorrhoids, but they were no more than transient or did not cause significant limitations . . . . I have also noted the claimant's knee complaints; however, also note that the claimant receives no treatment and takes no medications, even over the counter medications, for this condition; thus, conclude it also does not rise to the severe level.

14

15

16

17

18

19

20

21

22

(Tr. 18-20.) Thus, the ALJ cited evidence supporting the conclusion that these impairments and combination of impairments were not severe and that they had only a minimal effect on plaintiff's ability to work. (See id.; see also Tr. 144, 191, 192, 193-94, 215, 216, 218, 219, 263, 264, 265, 266, 267, 268, 275, 276.) In addition, the Court notes that other evidence in the record supports the ALJ's conclusion regarding the lack of severity of these impairments. (See Tr. 43, 119, 121, 122, 136, 139, 146, 159, 207, 212, 213, 215-16, 219, 250, 253, 265, 281, 283, 285, 290, 291, 292, 293, 297, 308, 311, 313, 315.) The Court also notes that some evidence in the record reflects poorly on plaintiff's credibility. (See, e.g., Tr. 31, 191, 220, 228, 246, 259, 264.)

23

24

25

26

The Court concludes that the medical evidence regarding plaintiff's impairments of hemorrhoids, Dysthymia, Impulse Control Disorder NOS, Intermittent Explosive Disorder, COPD, bilateral knee pain, sleep disturbance, and torn rotator cuff muscle in his right shoulder, does not demonstrate conclusively that these impairments were severe. If the medical evidence in

REPORT AND RECOMMENDATION - 16

the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ.  Sample, 694 F.2d at 642; see also Fair, 885 F.2d at 603. In addition, the Court has reviewed the relevant record and concludes that the ALJ's finding that plaintiff's impairments of hemorrhoids, Dysthymia, Impulse Control Disorder NOS, Intermittent Explosive Disorder, COPD, bilateral knee pain, sleep disturbance, and torn rotator cuff muscle in his right shoulder were not severe impairments is supported by substantial evidence. Magallanes, 881 F.2d at 750; see also Sample, 694 F.2d at 642.

       2.      The ALJ did not fail to consider properly all of the functional limitations caused by all of plaintiff's impairments.

       Plaintiff contends that the ALJ failed to consider properly during the remaining steps of the five-step process, all of the functional limitations caused by all of plaintiff's impairments, including those which he did not find to be severe. The Court finds this contention to be without merit. First of all, the Court notes that the ALJ specified that he "considered all symptoms." (Tr. 21.) Furthermore, as an example, although the ALJ only found asthma and personality disorder to be severe impairments, the ALJ's determination regarding plaintiff's residual functional capacity reflected limitations accounting for plaintiff's knee pain, torn rotator cuff and other impairments. (Tr. 21.) The ALJ's determination regarding plaintiff's residual functional capacity includes limitations on amount of weight that plaintiff can lift and carry, as well as limitations regarding climbing ladders ropes and scaffolds, and stooping, kneeling, crouching and crawling. (Id.)

3.      The ALJ evaluated properly the medical evidence.

Plaintiff contends that the ALJ failed to evaluate properly the medical evidence by not specifying what weight he was giving to some of the medical evidence, and by not giving controlling or sufficient weight to some of the medical evidence.

To the extent that opinions of Sattar, the Cascade therapists, Kristine Harrison, Ph.D. and David Little, D.O. were rejected, they were rejected by the ALJ for specific and legitimate reasons that are supported by substantial evidence in the record.  See Lester, 81 F.3d at 830-31. First of all, the ALJ cited conflicting clinical evidence, which included medical opinion and other medical evidence supporting a conclusion of only moderate symptoms (Tr. 18, 19, 22). For example, the ALJ noted that the plaintiff had "alleged that he had never experienced a problem with depression, and acknowledged no feelings of worthlessness, helplessness, or hopelessness [citation omitted].  .  .  .  .  He also added that he did not experience anxiety and 'has not had emotional problems.'" (Tr. 18.) The ALJ further noted that Mayers "noted features of an anti-social personality disorder, but assigned him a Global Assessment of Functioning (GAF) score of 60, indicating only moderate symptoms," and that at Cascade, even though plaintiff was diagnosed with major depressive disorder, "he was still assessed a GAF of 55, still indicating only moderate symptoms." (Tr. 18, 19.) The ALJ also noted that plaintiff had not received medical treatment most of the time, for most of his impairments, and that at plaintiff's most recent therapy session relative to the hearing, in December, 2007, plaintiff "reported to this therapist that he had no specific complaints or concerns and was doing fairly well with his medication." (Tr. 19.) The ALJ also noted that Dr. Gaffield indicated that plaintiff "ambulated without difficulty," and that plaintiff maintained a ten acre farm, as well as worked, during the relevant period. (Tr. 18, 19, 20, 21, 22.)

REPORT AND RECOMMENDATION - 18

The ALJ stated his interpretation of the conflicting evidence, as well as noting evidence supporting an adverse conclusion regarding plaintiff's credibility. (Tr. 21, 22.) For example, the ALJ noted that "[w]hile [plaintiff] consistently alleges that he was unable to concentrate for more than 60 to 90 minutes, Dr. Mayers administered the mental status examination and concluded that his concentration was good." (Tr. 21.) The ALJ also noted that plaintiff "alleged significant fatigue and other physical limitation due to asthma, yet, pulmonary functioning testing showed only a moderate amount of obstruction." (Tr. 22.) The ALJ interpreted the conflict in the evidence regarding plaintiff's hygiene: "[plaintiff] did not have access to running water in his home throughout most of the relevant period  .  .  .  .   Thus, any apparent hygiene issues do not appear to be related to any mental health limitations." (Id.) The ALJ interpreted the conflicting evidence and concluded that plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not [entirely] credible." (Tr. 21-22.) Finally, the ALJ made findings. (Tr. 17, 20, 21, 23, 24). Therefore, the Court concludes that the ALJ properly set out a detailed and thorough summary of the facts and conflicting clinical evidence; stated his interpretation of that evidence; and made findings. See Cotton, 799 F.2d at 1408.

Plaintiff also contends that it was error for the ALJ to not explicitly discuss some of the medical opinion evidence, such as that of Little and the Cascade therapists. However, the ALJ "need not discuss *all* evidence presented."  Vincent, 739 F.2d at 1394-95.  Therefore, the Court concludes that the ALJ properly considered the medical evidence in this case.

4.    The ALJ evaluated properly plaintiff's testimony regarding his symptoms and limitations.

Plaintiff contends that the ALJ erred by failing to evaluate properly plaintiff's testimony regarding his symptoms and limitations. Much of the ALJ's discussion of plaintiff's credibility

REPORT AND RECOMMENDATION - 19

already has been discussed, including plaintiff's daily activities and work during the relevant period. See supra, pp. 19-20. (See also Tr. 18, 19, 20, 21, 22.) Furthermore, the ALJ discussed how plaintiff's allegations of severe symptoms "are also inconsistent with the claimant's reported activities, [including as an] example [that] [plaintiff] was enrolled with a temp agency into the relevant period, and his earning records list earnings for calendar years 2004, 2005, and 2006 [and] that [plaintiff] maintained 10 acres of property, as well as cared for numerous animals." (Tr. 22.) As already discussed, the ALJ discussed how plaintiff's symptom allegations conflicted with objective medical evidence, including areas such as concentration and pulmonary functioning. See supra, p. 17. The ALJ also noted impairments for which plaintiff did not seek medical attention or take medication. (See Tr. 19, 20.) The ALJ furthermore noted that although plaintiff complains of severe breathing symptoms, "plaintiff continue[s] to smoke approximately one pack of cigarettes per day." (Tr. 19.)

The Court concludes that the ALJ's credibility determination is "supported by specific, cogent reasons." See Reddick, 157 F.3d at 722. Furthermore, the ALJ "specifically identif[ied] what testimony is credible and what evidence undermines [plaintiff's] complaints." See Greger, 464 F.3d at 972. Even though the ALJ discussed how plaintiff's allegations regarding the severity of his symptoms conflicted with some of the objective medical evidence and furthermore pointed out the affirmative evidence demonstrating that plaintiff may be malingering, the ALJ nevertheless still provided "clear and convincing" reasons for rejecting plaintiff's testimony to the extent to which he rejected it. See Smolen, 80 F.3d at 1283-84. In addition to the evidence regarding plaintiff's credibility noted by the ALJ, the Court also notes that although plaintiff testified that he has "used marijuana in [his] youth" (Tr. 31), his intake evaluation from October 26, 2006 indicates that he last used marijuana when he was 51, (Tr.

164), and he stated to Mayers around September 21, 2005 that his last use of marijuana was 10 years ago (Tr. 191). Similarly, although the ALJ indicates that plaintiff's work during the relevant period supports the conclusion that plaintiff's impairments were not severe, and cites plaintiff's earning records, the Court also notes that plaintiff stated that for his job as a laborer, which he held during the period of alleged disability, he lifted 50 pounds or more frequently. (Tr. 136, 139.) Plaintiff specifically wrote into the form that he "did this 10 hours a day." (Tr. 139.) The Court also notes that plaintiff was cleared to return to work as a carpenter on June 8, 2006 by Dr. Bede, following a knee injury. (Tr. 177.) The Court concludes that the ALJ specifically provided clear and convincing reasons for rejecting plaintiff's testimony, and that he evaluated properly plaintiff's testimony regarding plaintiff's symptoms and limitations.

     5.    <u>The ALJ failed to evaluate properly the lay evidence</u>

     Plaintiff contends that it was legal error for the ALJ to fail to discuss Ms. Hansen's lay statement and to fail to consider properly the lay witness testimony provided by the Cascade therapists. The ALJ considered the lay evidence provided by the therapists at Cascade. (Tr. 19.) Although the ALJ noted evidence contrary to the evidence provided by the Cascade therapists, the ALJ did not state explicitly an intention to disregard the testimony of the Cascade therapists, and did not give reasons "germane to each witness" for disregarding this lay witness testimony. See <u>Bruce</u>, 557 F.3d at 1115. This was legal error. <u>See id.</u>

     The ALJ also failed to discuss the lay witness testimony provided by Ms. Hansen.  Lay witness testimony "is competent evidence and 'cannot be disregarded without comment.'" <u>Bruce</u>, 557 F.3d at 1115. Therefore, the ALJ's failure to discuss properly the lay testimony provided by Ms. Hansen was legal error. <u>See id.</u> "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot

REPORT AND RECOMMENDATION - 21

1   consider the error harmless unless it can confidently conclude that no reasonable ALJ, when

2   fully crediting the testimony, could have reached a different disability determination." <u>Stout</u>, 454

3   F.3d at 1056. Because the Court cannot conclude that no reasonable ALJ, if fully crediting the

4   testimony of either Ms. Hansen or that of the Cascade therapists, could have reached a different

5   disability determination, the ALJ's failure to discuss properly the lay witness testimony

6   demonstrates that this case should be reversed and remanded.

7

8           6.      <u>On remand, the ALJ needs to reconsider the issue of residual functional capacity.</u>

9           Plaintiff contends that the ALJ erred in his assessment of plaintiff's residual functional

10  capacity. However, because this case should be remanded to the Administration for further

11  consideration, including consideration of the lay witness testimony, the ALJ may, upon remand,

12  reach a different conclusion regarding the residual functional capacity of plaintiff. Therefore, the

13  Court will not address this concern of plaintiff.

14

15          7.      <u>Similarly, on remand, the ALJ should reconsider whether plaintiff was disabled at</u>

16  <u>step five in the sequential disability evaluation.</u>

17

18          Similarly, although plaintiff contends that it was legal error for the ALJ to fail to find

19  plaintiff disabled at step five in the sequential disability evaluation, as this case should be

20  remanded to the Administration, the ALJ should be allowed an opportunity to evaluate anew the

21  determination regarding disability.

22

23          8.      <u>The new evidence should be considered by the ALJ on remand.</u>

24          Finally, plaintiff also contends that the Appeals Council erred by failing to remand

25  plaintiff's claim based on new evidence that was submitted to it from Cascade Mental Health.

26  However, the Court does not review the decision of the Appeals Council to deny review and

REPORT AND RECOMMENDATION - 22

remand based upon new evidence. <u>Woodsum</u>, 711 F. Supp. 2d at 1248. In addition, to justify a remand on the basis of new evidence, plaintiff must show not only that the new evidence is material to determining his disability, but, plaintiff also must show that he "had good cause for having failed to produce that evidence earlier." <u>Mayes</u>, 276 F.3d at 462. Although the new evidence in this case is material to a determination regarding disability, plaintiff has not made any attempt to show good cause for having failed to produce the evidence prior to the hearing. <u>See Mayes</u>, 276 F.3d at 462. However, as this case should be reversed and remanded to the ALJ for further consideration of lay witness testimony, <u>see supra</u>, pp. 22-23, and as this new evidence from Cascade Mental Health is material, <u>see Mayes</u>, 276 F.3d at 462, this new evidence should be considered by the ALJ on remand.

CONCLUSION

Although the ALJ's finding at step two was not improper, upon remand, the ALJ should consider properly the lay witness evidence, as well as consider the new evidence by Cascade, which may affect the ALJ's finding at step two. Therefore, for the aforestated reasons, the court should reverse and remand the matter to the Administration for further consideration, beginning at step two.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections.  <u>See also</u> Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. <u>See</u> 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

REPORT AND RECOMMENDATION - 23

1   imposed by Rule 72(b), the clerk is directed to set the matter for consideration on January 21,

2   2011, as noted in the caption.

3           Dated this 20th day of December, 2010.

4

5

6           J. Richard Creatura
            United States Magistrate Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPORT AND RECOMMENDATION - 24